IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Peggy P. Scruggs, | ) | Civil Action No. 8:15-cv-03578-TMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

  This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

  Plaintiff protectively filed an application for DIB on November 12, 2010, alleging disability beginning May 31, 2010.  [R. 96–99.]  The claim was denied initially on May 20, 2011 [R. 72–74] and on reconsideration on January 24, 2012 [R. 81–82] by the Social Security Administration ("the Administration").  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on January 23, 2014, ALJ Gregory M. Wilson held a hearing on Plaintiff's claims.  [R. 38–71.]

---

[1]A Report and Recommendation is being filed in this case in which one or both parties declined to consent to disposition by a magistrate judge.

The ALJ issued a decision on April 25, 2014, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 15–31.] At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2015, and had not engaged in substantial gainful activity since May 31, 2010, the alleged onset date. [R. 17, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of ulcers/irritable bowel syndrome (IBS), asthma, obesity, degenerative joint disease (DJD) of the knees, degenerative disc disease (DDD) of the lumbar spine, and coronary artery disease (CAD). [R. 17, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of sleep apnea, headaches, depression and anxiety. [R. 17–18.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20, Finding 4.] The ALJ specifically considered Listings 1.04, 3.03, 4.02, and 14.09. [Id.] Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) specifically, the ability to lift and/or carry (including upward pulling) twenty (20) pounds occasionally and frequently lift and/or carry ten (10) pounds; stand and/or walk (with normal breaks) for a total of about six (6) hours in an 8-hour workday; and sit (with normal breaks) for a total of about six (6) hours in an 8-hour workday except occasional pushing/pulling in the lower extremities; never climb ladders, ropes and scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; avoidance of

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> concentrated exposure to temperature extremes, humidity and fumes; and avoidance of moderate exposure to hazards.

[R. 20, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was capable of performing her past relevant work as a teacher.  [R. 31, Finding 6.]  Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from May 31, 2010, through the date of the decision.  [R. 31, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined.  [R. 1-6.]  Plaintiff filed the instance action for judicial review on September 7, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and is subject to remand.  Specifically, Plaintiff contends the ALJ failed to properly evaluate the demands of her past relevant work, failed to account for significant limitations in her RFC, and improperly rejected her treating physician's opinions regarding her ability to work.  [*See* Docs. 9, 11.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and should be affirmed.  Specifically, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff can perform her past relevant work as a teacher in light of her properly evaluated RFC.  [*See* Doc. 10.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the

5

Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

8

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.　*Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.　*Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.　*Other Work*

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for

13

making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.  Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

14

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

15

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Residual Functional Capacity Assessment and Treating Physician Opinion**

Plaintiff argues the ALJ failed to make a proper RFC assessment because he failed to account for work preclusive limitations associated with her IBS [Doc. 9 at 29–30] and failed to accurately evaluate the opinion of her treating physician Dr. Gerald Rollins ("Dr. Rollins") with Orthopaedic Associates, who found her disabled as of August 29, 2012 [*id.* at 31, 36–37].[6]   The Commissioner contends that, even though the ALJ did not find Plaintiff's testimony regarding her IBS credible, he did limit her to light work with several postural limitations, including regular breaks, as a result of her alleged IBS. [Doc. 10 at 17.]

### *ALJ's Analysis*

With respect to Dr. Rollins's opinions, the ALJ noted that Dr. Rollins opined that Plaintiff was only capable of performing a sedentary type job with limited walking and no stair climbing and no squatting based on his exam on August 29, 2012.  [R. 28.]  The ALJ also noted that Dr. Rollins completed a treating source statement dated December 19, 2012, and opined that Plaintiff could not perform any work over light work; would have to

---

[6]While Plaintiff raises the issue of limitations associated with Plaintiff's medication side effects in the Table of Contents to the brief [Doc. 9 at 2], Plaintiff makes no further mention of medication side effects in her arguments for remand.  Thus, the Court finds this argument was abandoned by Plaintiff and, therefore, waived. [*See also* Doc. 11.]

rest away from the work station for significantly more than an hour; would probably miss three (3) days of work per month; and would have problems with attention to and concentration to interrupt the work portion of the work day because of severe arthritis of both knees. [R. 28–29.] Dr. Rollins also opined that the earliest date Plaintiff was disabled was August 29, 2012 (Exhibit 27F). [R. 29.] Additionally, Dr. Rollins completed a statement dated March 13, 2013, and opined that Plaintiff had been limited to no more than sedentary work since at least August 2012, and possibly before that, and that, it is consistent with her condition that she would need to rest away from the workstation for greater than an hour out of the workday due to her knee swelling and that she would not be able to stoop or kneel regularly during the workday (Exhibit 29F). [*Id.*]

The ALJ assigned limited weight to Dr. Rollins's opinions finding them inconsistent with his physical exams which consistently showed normal gait and station, and that Plaintiff could undergo testing and participate in an exercise program. [*Id.*] The ALJ explained his consideration of Dr. Rollins's opinions as follows:

> In August 2011, she denied back pain, joint pain, joint swelling, muscle cramps, muscle weakness or stiffness (Exhibit 14F/3). Her sensation was intact, spine had normal alignment and mobility, and there was no deformity in April 2010, February 2011 and April 2011(Exhibit1 IF/3, 9, 31); November 2011(Exhibit17F); December 2011, February 2012, April 2012 and May 2012 (Exhibit 23F/4, 24, 35, 44); October 2012, December 2012 and March 2013 (Exhibit 31F/13, 19, 25); and May and June 2013 (Exhibit 32F/3, 12). Her spine and pelvis had normal alignment and mobility and no deformity. There was some trepidation and enlargement of the left knee. Sensation was intact in November 2011(Exhibit17F/3). In August 2012, she was noted to be limping (Exhibit 31F/37).
>
> Dr. Rollins' record does not support his opinion because in August 2012, her exam revealed that she had moderate effusion, no instability, good range of motion, and no increased

18

> warmth or erythema in the left knee. The right knee had minimal effusion with range of motion, no instability, and she was not particularly uncomfortable with McMurray testing. There was no popping or clicking. X-rays showed moderate arthritis in the right knee and severe arthritis in the left knee. The left knee was more symptomatic than the right (Exhibit 25F/3). Thirdly, it is inconsistent with Dr. Henderson's opinion that she could return to work on September 15, 2009 (Exhibit 4F/4). Fourth, her treatment records in November 2011, indicate no numbness or tingling; normal gait, and she was healthy appearing. Her left knee had some swelling and small effusion. X-rays of the lumbar spine showed no problems of an acute nature (Exhibit 18F/2).

[R. 29.]

### *Discussion*

Plaintiff testified that her IBS caused her to go to the bathroom "probably eight to10 times to urinate." [R. 52–53.] She also testified that there is pain associated with her IBS. [R. 53.] The ALJ noted, however, that during her visits to Carolina Medical Associates (citing Exhibits 6F, 8F, 11F, 14F-1 7F, and 40F/20), Plaintiff never mentioned incontinence [R. 21]; regularly denied any change in bowel or bladder habits [R. 21–22]; reported some constipation and some IBS, but nothing extraordinary during a consultative exam on December 14, 2011 [R. 26]; and denied any abdominal pain, black stool, diarrhea, nausea or vomiting during an evaluation by Dr. Lijewisky on September 13, 2013 [R. 27]. The ALJ found that the medical evidence did not support limitations for IBS that were more restrictive than those provided for in the RFC, and Plaintiff failed to direct the Court to evidence, not considered by the ALJ, which would require the Court to direct reconsideration of this finding. Further, the Court notes that the ALJ found Plaintiff's testimony and her alleged restrictions due to her impairments not entirely credible, and Plaintiff did not challenge this finding.

19

While Plaintiff disagrees with the ALJ's weight assigned to Dr. Rollins's opinions and the RFC assessment, Plaintiff points to no evidence of record, not considered by the ALJ, which requires a remand of this decision for further consideration.  The ALJ reviewed the evidence of record and found Dr. Rollins's opinions were inconsistent with his findings on examination of Plaintiff's knee.  Because the ALJ clearly articulated his reasoning for weighing Dr. Rollins's opinions and giving them little weight, the Court is constrained to accept the weight assigned in the absence of a factual or legal error on the part of the ALJ. *Craft v. Apfel*, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. 1998) (internal citation omitted) (A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies'...or has not given good reason for the weight afforded a particular opinion.").  Accordingly, substantial evidence supports the ALJ's decision.

**Past Relevant Work**

Plaintiff contends the ALJ improperly found her capable of her past relevant work as a school teacher without making any inquiries about the mental demands of this work. [Doc. 9 at 25.]  Plaintiff argues that her providers opined regarding mental limitations that would preclude her from doing such a mentally complex job [*id*. at 25–26], and that the ALJ failed to perform a function-by-function analysis of her past relevant work before making this determination [*id*. at 24].  Specifically, Plaintiff argues that Dr. David Mitchell (Dr. Mitchell) with Orthopaedic Associates opined she would have problems with attention and concentration such that she would have frequent interruptions in tasks during the working

20

portion of the day. [*Id.* at 26.]   The Commissioner argues Plaintiff failed to cite to any objective evidence showing that the requirements of her past relevant work would conflict with her RFC.  [Doc. 10 at 15.]

### *ALJ's Findings Related to Past Relevant Work and Mental Impairments*

In evaluating Plaintiff's mental impairments, at Step 2, the ALJ considered the record evidence and found that her mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore non-severe.  [R. 18.] And, at Step 2, the ALJ determined that Plaintiff's mental impairments caused mild limitations in the area of activities of daily living, and in the area of concentration, persistence or pace.  [R. 19.]  Plaintiff did not challenge this finding.

With respect to the medical opinions regarding Plaintiff's mental impairments, the ALJ assigned little to no weight to the opinion of Plaintiff's treating physician Dr. Nicholas Fleming ("Dr. Fleming") with Carolina Medical Affiliates regarding the presence of work related limitations associated with Plaintiff's mental condition based on the fact that Plaintiff had not been treated by a mental health specialist and had not required any hospitalizations; enjoyed playing piano, church, reading, and spending time with her grandchildren; her mental status exams consistently showed that her judgment and insight were intact; and she consistently reported no depression, anxiety or agitation.  [R. 18.] Plaintiff also did not challenge this finding.

The ALJ did not assign a weight to Dr. Mitchell's July 11, 2012, opinion that Plaintiff would have problems with attention and concentration due to chronic pain because Dr. Mitchell noted the basis for his opinion was "subjective." [R. 29.]  And, in Dr. Mitchell's note

21

dated September 25, 2012, he explained that he had last seen Plaintiff in 2011 and that it was difficult to say what Plaintiff's limitations would be now because he had not seen her since 2011.  [R. 29–30, 597.]

Furthermore, the ALJ found that the evidence of record did not support more than mild limitations in Plaintiff's mental impairments citing reports that Plaintiff "plays the piano, attends church, reads, was reported to have no depression anxiety or agitation (Exhibit 31F and 32F11,17 and 35)"; her "[j]udgment and insight were reported to be intact, as oriented times three with normal memory mood and affect (Exhibit 31F13, 19, 25 and 37)", and that "[t]hese findings are repeatedly noted throughout the medical records on numerous appointments (Exhibits 32F, 18F, 17F, 14F, 11F, 4F, and 3E)." [R. 19–20.]

Upon considering the ALJ's RFC and Plaintiff's past relevant work, the vocational expert ("VE") testified that Plaintiff's past relevant work as a teacher (DOT # 092.227-010[7]),

---

[7]The DOT provides that the job of elementary school teacher, as performed in the national economy, requires the ability to do the following:

> Prepares course objectives and outline for course of study following curriculum guidelines or requirements of state and school. Lectures, demonstrates, and uses audiovisual teaching aids to present subject matter to class. Prepares, administers, and corrects tests, and records results. Assigns lessons, corrects papers, and hears oral presentations. Teaches rules of conduct.  Maintains order in classroom and on playground. Counsels pupils when adjustment and academic problems arise. Discusses pupils' academic and behavioral attitudes and achievements with parents. Keeps attendance and grade records as required by school. May coordinate class field trips. May teach combined grade classes. May specialize by subject taught, such as math, science, or social studies. May be required to hold state certification.

http://www.occupationalinfo.org/09/092227010.html, December 5, 2016.

was light, skilled, with an SVP of 7, and noted that, in light of her RFC, she was capable of such work both as she performed it and as it is performed in the national economy.  [R. 69.]  In light of this testimony, the ALJ found Plaintiff not disabled under the Act. [R. 31.]

### *Discussion*

"Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1).  A plaintiff is not disabled under the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  In determining a claimant's ability to perform past relevant work, the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' [("DOT")] and its companion volumes and supplements."  20 C.F.R. §§ 404.1560(b)(2).

Plaintiff bears the burden of establishing her inability to work within the meaning of the Act, 42 U.S.C. § 423(d)(5), and must make a prima facie showing of disability by showing she is unable to return to her past relevant work.  Once Plaintiff establishes an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the Plaintiff can perform alternative work and that such work exists in the regional economy.  Here, the sequential evaluation terminated at Step Four, where Plaintiff had the burden of proving she could not perform her past relevant work. It is at Step Five where the Commissioner would have been required to prove that Plaintiff could "make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v).

Plaintiff contends the ALJ failed to comply with SSR 82-62 in determining she was capable of performing her past relevant work.  And, Plaintiff challenges the ALJ's finding

23

regarding her ability to do past relevant work only with respect to his finding that she is mentally capable of such work. SSR 82-62 requires that an evaluation of Plaintiff's ability to do past relevant work carefully consider the interaction between the limiting effects of Plaintiff's impairments and the physical and mental demands of her past relevant work to determine whether the individual can still do that work. A determination regarding Plaintiff's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy. SSR 82-62.

A review of Plaintiff's employment history shows that she had one job in the past fifteen years as an elementary school teacher. [R. 118.] Plaintiff provided that, as a part of her job, she had to walk for 3 hours/day, stand for 3 hours/day, handle large objects 1 hour/day, write, type or handle small objects 2 hours/day, and reach 2 hours/day. [R. 119.] She also indicated that she did not have to lift or carry much and that the heaviest object she lifted was less than 10 pounds. [*Id.*] Plaintiff indicated that her ability to work is limited by her being unable to focus and recall things; and by her trouble sitting or standing for lengths of time. [R. 147.] Plaintiff also indicated that her knees, back, head, and neck problems limit her ability to work, as well as chronic breathing problems. [*Id.*] Plaintiff testified that she stopped working because she was really weak and shaky, was losing weight, and could only stay for about an hour before she got really sick. [R. 47.] She

24

testified that she could not work as a teacher and be responsible for the children because the stress was really great. [R. 53.] Despite these allegations, the Court notes that the ALJ found Plaintiff's testimony and her alleged restrictions due to her impairments not entirely credible. Plaintiff did not challenge this finding.

While Plaintiff challenges the ALJ's finding that she can perform her past relevant work based on alleged mental limitations, Plaintiff failed to direct the Court to any evidence of record, not considered by the ALJ, which would support a finding that she is more limited mentally than found by the ALJ. Additionally, Plaintiff provided no legal support for her contention that she, with only mild restrictions in concentration, persistence and pace, could not perform her past relevant work either as she actually performed it or as it is performed in the national economy. As such, Plaintiff did not carry the burden to make a showing that she is unable to return to her past relevant work.

Upon review, the Court finds the ALJ sufficiently complied with SSR 82–62 in determining whether Plaintiff was capable of performing her past relevant work. Further, the ALJ reasonably relied on the VE's testimony that Plaintiff could perform her past relevant work both as she performed it and as it is performed in the national economy in light of the RFC assessment. And, the Court notes that although the ALJ did not place any restrictions on Plaintiff in the RFC with respect to mental limitations, Plaintiff does not

challenge the RFC on this basis.[8]  Accordingly, the Court cannot find that the ALJ's decision is not supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.


January 30, 2017                    s/Jacquelyn D. Austin
Greenville, South Carolina                United States Magistrate Judge

---

[8]To the extent Plaintiff may be challenging the ALJ's RFC determination for failure to include mental limitations, the Court finds substantial evidence supports the ALJ's decision to exclude such limitations as the record reflects that although Plaintiff listed anxiety and depression on her disability application [R. 117], the hearing testimony indicated that Plaintiff took two prescriptions to treat anxiety and depression, and they helped control those issues.  These medications were prescribed by Dr. Fleming, a family doctor; she had not seen a psychiatrist or psychologist. [R. 53–55.] Dr. Fleming also noted he had not recommended psychiatric care for Plaintiff because she had not mentioned having difficulties with depression or anxiety. [R. 356.] And, Dr. Ward noted that Plaintiff's anxiety was stable on the current meds and her depression was improved. [R. 744–45.] Also, the ALJ gave great weight to Dr. Harkness and Dr. Clanton's psychological consultant reports that noted Plaintiff's mental status was basically "normal." [R. 424–36, 488–500.]

26